## LEARNED ET AL. v. COLLINS ET AL.

[69 South. 682.]

1. WILLS. *Construction. Estate of devises.*

The controlling canon of construction in respect to the interpre-
tation of wills is always to ascertain the real intent of the
testator and then to effectuate that intent.

2. SAME.

Where a will provided that all of the testator's estate should be
equally divided between his widow and his three children in
equal proportions for life, and to the children of their bodies,
and if they had no children at their death, their shares was to
revert to the estate and be again divided by the survivors and
to their heirs, share and share alike, they to take a life estate
only, and another clause of the will provided that the entire
estate should remain common stock until the children or any-
one of them should become of age or marry, in which event
the share of such child was to be set apart, the remainder
to be held in common until another child should become of age
or marry, in which case another division was to be made. And
the will also provided that a certain piece of land, upon
which the testator's mother resided, was to be divided among
the children at her death or as soon thereafter as it shall
become necessary to divide and set off any part of my estate
to any of my children. In such case, construing the will as a
whole, the children took merely a life estate in the land upon
which the testator's mother lived, and did not take the fee
as tenants in common.

APPEAL from the chancery court of Jefferson county.
HON. R. W. CUTRER, Chancellor.

Suit by Mabel Collins and others against Rufus F.
Learned and others.

From a decree overruling a demurrer to complainant's
bill, defendants appeal.

The facts are fully stated in the opinion of the court.

*W. C. Martin,* for appellant.

This case calls for a construction of certain clauses
in the will of Washington S. Burch, deceased, which will

has already been before this court for construction and interpretation in the case of *Davenport* v. *Collins,* 95 Miss. 358; 96 Miss. 716. The last decision was rendered on suggestion of error and the suggestion was sustained.

By these decisions it was settled that the general limitations of his estate created by clause three of the will of Mr. Burch were not violative of the rule against perpetuities, or of any other principle, but were valid; also that the particular real estate, the title to which was dependent upon those decisions, and which had been separately treated by the testator in clause five of his will, was governed by and passed under the limitations of clause three.

It is clear, upon authority and reason, that the time of the death of Mrs. Nancy Burch, with respect to the death of the testator, did not affect in any way the devise to testator's children contained in clause ten; simply reading the clause will demonstrate that it was the manifest intention of the testator that his three children should divide the property among them in any event, but that as his mother was living upon it at the time he made his will this division should be postponed until after her death. We do not think that there was a devise of a life estate to Mrs. Nancy Burch, but that she was given merely the right to live on it during her lifetime; but if this should be regarded as tantamount to a devise of a life estate to her then there was a life estate to Mrs. Burch, and after her death the property was to be equally divided among the children. In such case the time of the death of the life tenant with regard to the death of the testator is immaterial, and there is no lapse.

For this proposition it is deemed sufficient to cite the case of *Robinson* v. *Portland Female Orphan Asylum,* 123 U. S. Supreme Court page 702, same case; 31 Law Edition (U. S. S. C. Reps.), page 293.

We think that the real and only question in the case is this:  Did testator's children take fees in the property dealt with in clause ten, or merely life estates, by operation of clause three?

On the record the entire will of Washington S. Burch is before the court.  It has been held that clause three contains valid limitations and that the property devised in clause five passed under those limitations.  How about that dealt with in clause ten?

Clause three provides that the estate of the testator, speaking generally, should be divided equally among his wife and three children, naming them, to be held by them for life, etc.  Here we have a division into four parts—the wife taking one of them.  On the other hand clause ten provides that the particular property covered by it should be divided equally among his three children.  Here is a division into three parts, as to this land.  If it is held that the land in question was limited by clause three and its provisions, then there immediately appears a direct and violent conflict between the clauses—created by the court and not the testator.  Such an interpretation would put in as one of the life tenants the widow of the testator, and give her an equal share with the children, although the will plainly calls for a division, as to this particular land, among the children alone, to the exclusion of the widow.  We respectfully submit that this would not be a construing and harmonizing of the different paragraphs of the will itself, but the making of a new will for the testator—and the striking down of an important part of the will he made, in so doing.

What is the meaning of this clause ten?  Did the testator mean by it merely to make some provision for the comfort of his mother, without any further intention to take this plantation out of the scope of clause three and give it absolutely to his children?  No such limited intention can be imputed to him by any rational process

that occurs to us. If he had meant that he would have said so, in language something like this: "I do not wish any division of the plantation on which my mother lives to be made until after her death." And he would have stopped with that; he knew, of course, what he had said in clause three; knew that by that clause his widow would receive a share for her lifetime in the property if he did not expressly provide otherwise—so he did provide otherwise by adding the words that the place was to be divided equally among his three children. By doing this he effectually cut out his wife, and by cutting her out he made it impossible for the limitations of clause three to apply, because that clause relates, and can only relate, to property in which the widow took an interest. If clause three does not apply then the children of Burch took fees and the demurrer must be sustained.

Again, the language of clause 10, aside from the compelling character of the omission of the wife in the division to be made under it, is in itself a demonstration that testator did not intend that his children should take only a life estate in this property. The general scheme of the will is embodied in clauses two, three, four and six; by these clauses testator provided that all of his estate, except such as was particularly excepted and otherwise disposed of in later paragraphs should be kept together as common property, undivided, until as each child arrived at the age of twenty-one years, or married, his, or her, share should be, by the executors, set off in severalty, but the balance should remain as common stock until another division was to be made. The wife, by clause four, was given the right to have her share set off to her whenever she might desire. In these clauses the testator is dealing with his estate generally; that is to say, with that portion of it to be controlled by the limitation of clause 3. That such was his intention is manifest from a careful reading of the clauses,

their relative position in the will, and the use of the parenthesis in clauses two and three, in which the testator with care provides that not all of his property shall go under clause three. The divisions to be made of property controlled by clause three were successive divisions, and not one division at any time among his children. Under clause three and its associate clauses no child of the testator could claim a share in possession until arriving at maturity or marrying, and then the other two, under the will, would still have their shares held in common under control of the executors, and would not have any right to a division between them, there being two left in the case supposed, until one or the other reached twenty-one years of age, or married. Those were the injunctions of the testator with reference to property which his children were to take under clause three. But now see how differently he provided for the Nancy Burch Place; so soon as Mrs. Burch died, or as soon thereafter as any division might be made under the will generally, this property was to be divided equally among his three children. Is it not manifest that the tesator was dealing separately with this property; that he did not intend that it should be regarded as controlled by clause three; that it was one of those pieces that he particularly excepted and otherwise disposed of in his will? The language of clause ten takes the land devised by it out of the general scheme, satisfies the parenthetical exception in both clauses two and three, and gives a fee to the three children as co-tenants. And this construction must follow unless the court is prepared to disregard, first, the exclusion of the widow from any share in the Nancy Burch Place, and second, the exclusion of the general plan of the testator, both of which things are done by the testator in clause ten.

. From the foregoing considerations it would seem that only one conclusion can possibly be reached, and that favorable to appellant.

*Truly & Truly*, for appellees.

We submit that the general intention of the testator having been ascertained and judicially determined, it must govern. This has always been the rule in general and especially in Mississippi. "The cardinal rule in the construction and interpretation of wills or codicils is that the intention of the testator must be ascertained if possible, and, if it is not in contravention of some established rule of law or public policy, must be given effect." 40 Cyc. 1386. And again: "Where the testator's intention is clearly manifest from the whole will, and violates no rule of public policy or positive law, technical rules, if they would tend to defeat such intention, must yield to a practical construction of the will." 40 Cyc. 1394, referring to *Sorsby* v. *Vance*, 36 Miss. 564, as announcing the general rule in Mississippi.

While citation of authority is hardly necessary to support the proposition that the real intent of the testator must govern, we will weary the court with the following from our own state: "In the interpretation of every will, the prime object is always to ascertain what the real intention of the testator was." *Crossett* v. *Clements*, 7 So. 207.

"A literal construction is not to be indulged in, which would defeat an intention appearing from the whole will; but we must consider all its parts, and the circumstances under which it was made as shown on its face, and thereby ascertain the intention of the testator." *Haughton* v. *Brandon*, 40 Miss. 729.

"In construing a will the court will look at all the circumstances which surrounded the testator and apply the terms of the instrument to its subject-matter and objects. Although there may be apparent inconsistencies in several parts of the will, yet if there be clearly discerned a general intent, that should prevail and override the particular, although the latter be first expressed. The intent must control if it can be made com-

patible with the language used." *Watson* v. *Blackwood,* 50 Miss. 15.

"Where the intent of a testator violates no law, it stands; if it violates the law, the will fails." *Ball* v. *Phelan,* 92 Miss. 293.

"In the construction of a will, every part and provision must be made, if possible, to harmonize and be consistent with the other parts; a construction will not, therefore, be put upon a clause of doubtful import, which could make it irreconcilably inconsistent with another plain and clear provision of the will." *Dean* v. *Nunnaly,* 36 Miss. 358.

"In the construction of wills, the main object is to ascertain the intention of the testator; the intention is to be gathered from the whole will, and, if legal, is to be carried out notwithstanding it may violate technical rules which relate to the construction of words rather than the nature of the estate." *Sorsby* v. *Vance,* 36 Miss. 564; *Tatum* v. *McLellan,* 50 Miss. 1; *McGehee* v. *McGehee,* 74 Miss. 386; *Lucas* v. *Lochart,* 10 S. & M. 466; *Leigh* v. *Harrison,* 69 Miss. 923.

If, therefore, we have stated the rule correctly in announcing that the general intention of the testator must govern, unless in plain contravention of some statute law, the next question which presents itself for consideration is: What was the intention of Washington S. Burch, the maker of the will here under review? This branch of the subject is, fortunately, free of difficulty, because of the language of this court in considering this identical will. We quote from the opinion first delivered:

"But it is said, and correctly said, that the will must be taken by the four corners, and rigidly examined as to all its provisions, in order that the intent of the testator may be thereby discovered, and if such general intent appear, then the particular language of the third clause will be wrested from its plain, ordinary, and

grammatical meaning, in order that the intent of the testator may prevail.''

The court ''recognizes the soundness of this rule of construction,'' but came to the conclusion that the rule against perpetuities had been violated. Upon consideration, however, the court, adhering to the rule of construction stated in the first opinion, announced what the intention of the testator was when the will was construed in accordance with the rule as stated. We quote now from the opinion finally rendered in placing an interpretation upon this will.

''But it was also stated (in the original opinion) that the controlling canon of construction in respect to the interpretation of wills is always to ascertain the real intent of the testator, and then to effectuate that intent, if in any way it can be reasonably effectuated within the rules of law. A grave and mature reconsideration of this will satisfies us that it was no part of the purpose of the testator to vest any life estate in any grandchild or grandchildren under any circumstances, but that his purpose manifestly was to vest an express life estate in his children and his wife, who survived with remainders in fee to their children. That was the dominant idea, that the real purpose of the will, and any mere indistinctness in its phraseology, or awkwardness of expression, in the mere words used in the will, must be so dealt with, if reasonably possible, as to effectuate, and not overthrow, the dominant intent of the testator. Doubtless there is some confusion and some awkwardness of expression in this third clause of the will. But, if the great controlling purpose of the testator be kept in mind, we think it will result satisfactorily that the word 'they' refers alone, in harmony with his controlling purpose, to his children and his wife.''

And we are clearly of the opinion that the true purpose and dominant intent of the testator is worked out, and is reasonably and consistently worked out, by hold-

ing that this word 'they,' in the clause referred to, has reference solely to the testator's wife and his own children living at the time of his death.

Conceding that the language used is cloudy and the expression awkward, nevertheless it is just as reasonable, and we think much more reasonable, upon mature reflection, to refer this word 'they' in the connection indicated to the wife and children of the testator, and thus effectuate what the whole will taken together shows was the purpose of the testator, to wit, to vest life estates in his wife and children and remainders in fee in his grandchildren.''

We find, therefore, that this court; construing this identical will, has declared that the manifest intention, the dominant purpose of Washington S. Burch was to see that his children and widow received but a life estate in his property.

Stevens, J., delivered the opinion of the court.

The appeal in this case is from a decree overruling a demurrer to the bill of complaint filed by appellees as complainants below. The case turns upon the construction of the last will and testament of one Washington S. Burch, who died in Jefferson county in 1843, leaving a will that was duly probated and certain provisions of which were construed by this court in the case of *Davenport* v. *Collins,* 95 Miss. 358, 48 So. 733, and on suggestion of error, 96 Miss. 716, 51 So. 449. The present controversy involves the construction of clause ten of the will and ownership of the land known as the ''Nancy Burch place.'' Clause ten of the will is as follows:

''Tenth.—It is my will and desire, that at the death of my mother, or so soon thereafter as it shall become necessary to divide and set off any part of my estate to any of my children that the plantation, on which my mother Nancy Burch now resides, and that portion of

the personal property (if any) shall remain thereon at that time, be equally divided among my three children.''

The bill avers that Nancy Burch, the mother of testator, died in the lifetime of the testator, and that clause ten never in fact became operative. It is the contention of appellants that by the terms of this clause the three children of Mr. Burch were vested with a fee as tenants in common. Appellees contend, on the other hand, that this will, as said by Fletcher, J., in the first opinion construing same, ''must be taken by the four corners, and rigidly examined as to all its provisions, in order that the intent of the testator may be thereby discovered,'' and that by other provisions, and especially by the third clause, the three children, together with the widow, took only a life estate in this as well as the other lands of the estate. Clause three is as follows:

''Third.—It is further my will and desire that all of my estate, both real and personal (except such as is particularly excepted and otherwise disposed of in this will) be equally divided between my beloved wife Adaline Burch, and my three children, to wit, Isaac W. Burch, Eliza Jane Burch and Nancy Burch, share and share alike, and I do give and bequeath to them the same in equal proportions as aforesaid, to be theirs and each of theirs during their natural life, and to the children and heirs of their bodies (if any they have at the time of their death), if not the same shall revert to my estate in gross and be again divided between my said wife and children or such of them as shall survive, and to their heirs share and share alike, they to take a life estate in the same only; and all the children of my deceased children (if any) to take only such share as their deceased parent would have taken. But should any of my said children die without issue before such division, such division to be made among the survivors of my children and my said wife.''

Other provisions of the will shedding light on the present controversy are as follows:

"Second.—It is my will and desire that after my death all of my estate both real and personal (except such property as is hereinafter particularly excepted and otherwise disposed of) be kept together by my executors as the same may be found by them or hereafter come to their hands, and from the proceeds of the crops, that they pay all necessary plantation expenses, the comfortable support of beloved wife, Adaline Burch, so long as she shall remain my widow and permit her portion of my estate to remain with that of my children, undivided, and the suitable maintenance and support of my children, until they shall arrive at the age of twenty-one or marry," etc.

The fourth, fifth, sixth, and eighth clauses are as follows:

"Fourth.—It is my will and desire that my wife's share, hereinbefore mentioned, shall be divided and set off to her at any time she may desire after my death, if she should prefer a division, rather than receive her support out of the general fund as hereinbefore provided, and hereinafter specified.

"Fifth.—It is my wish that my wife remain in possession of the plantation on which I now live, and that she have the use of the household and kitchen furniture and stock, for and during her natural life, and that neither shall be divided among the heirs without her express assent until after her death, when the same shall be divided as hereinbefore provided in regard to other property equally among my children.

"Sixth.—It is my will and desire that all of my estate (except my wife's share if she should think proper to withdraw it) remain together common stock, until my children or any one of them shall become of age or marry, and when any one of them shall attain the age of twenty-one, or shall marry, then such child so becoming of age or marrying as aforesaid, shall be entitled to receive its respective share as herein provided, the bal-

ance to remain together common stock and be managed by my executors to the best advantage until another division shall become necessary under the provisions of this will, and so on until each child shall have received its proportion.''

''Eighth.—It is my will and desire that no part of my personal estate bequeathed to my children shall be sold or conveyed out of my family during the lifetime of my children and it is hereby declared to be contrary to the true intent and meaning of the bequests herein made to any of my children in any way, for any consideration, or under any pretext whatever to convey, alien, or incumber in any manner to any extent whatsoever, any of the personal property herein given and bequeathed, so long as any two of them shall live.''

It appears from the pleadings that the Nancy Burch place, by some division of the property, was allotted to the son of the testator, Isaac W. Burch, who went into possession and afterwards undertook to convey the place to William and Sam Bullen, from whom by mesne conveyances the defendants claim title. The bill avers that Isaac W. Burch died in February, 1913, leaving no children or bodily issue, and that complainants are, under the terms of the will, now the owners of the fee as remaindermen. It is conceded that if they are correct in this assumption the demurrer was properly overruled.

As was said by the court in construing clauses three and five of this will in the *Davenport Case, supra:*

''The controlling canon of construction in respect to the interpretation of wills is always to ascertain the real intent of the testator, and then to effectuate that intent.''

The court in that case held that the real estate dealt with by clause five of the will passed by the controlling terms of clause three. This clause three is a general devising clause of the will. By it the widow and children take a life estate in all the property of the testator not

"particularly excepted and otherwise disposed of."
Clause three expressly declares that all the estate, both
real and personal, not otherwise disposed of should be
equally divided between the widow and three children,
share and share alike, for their natural life. It is a
granting and devising clause. The language is: "I do
give and bequeath to them." What then was the inten-
tion of the testator in clause ten? Was the Nancy Burch
place thereby "otherwise disposed of"? Taking the will
"by the four corners," we think that clause ten in the first
place directed attention to Mr. Burch's ownership of this
place, which was then in possession of his aged mother.
The testator claimed it, but at the same time he ex-
pressed the wish that possession of his mother should
not be disturbed during her life. This was an expres-
sion of the very natural wish of the testator. By this
clause the testator furthermore gave directions as to the
partition of this specific property amongst those he
thought should make use of it. By clause five he ex-
pressed the wish that his wife should remain in posses-
sion of the homestead plantation. If she should remain
in possession of the homested, then, of course, she would
not reside on any portion of the Nancy Burch place.
None of the estate was to be divided until the oldest
child became twenty-one years of age or married, and
then only to the extent of setting apart to such child his
or her part. Looking at all the provisions of this will,
therefore, and keeping in mind, as said by Whitfield,
C. J., in the Davenport Case, "the great controlling pur-
pose of the testator," we think clause ten deals solely
with the particular question of the possession and divi-
sion of the Nancy Burch place, and not with the title
thereto. The usual words of a devise as employed in
clause three are absent, and the words "so soon there-
after as it shall become necessary to divide and set off
any part of my estate to any of my children" unques-
tionably link clause ten to the disposing clause of the

will so that these two clauses are "governed by one and the same purpose" as much so as clauses five and three which, by the former opinion of this court, are "undoubtedly linked." The property dealt with by clause ten is linked to the general bulk of his estate by the language "so soon thereafter as it shall become necessary to divide and set off any part of my estate." If these words are not construed in connection with clauses three and six, then they become meaningless. Any other construction would, immediately upon the death of the testator, invest the three infant children with the property in question free of any limitation, and would be repugnant to the general plan of the testator to hold the estate of the children together under one management during their minority. To segregate and consider alone any important clause of this will would simply be to "stick in the bark" and create confusion and defeat the plan of the testator. On the other hand, if we look at all its provisions, the entire will reflects a harmonious plan by which a solicitous and providing husband and father attempted to secure a home for his widow and a just and equitable partition of his valuable estate among his immediate family circle, or those who survived and their descendants.

. The construction given to clause ten by the chancellor of the court below is in perfect accord with the rule of construction and pronouncements of this court in the Davenport Case, and the demurrer, in our judgment, was properly overruled.

*Affirmed.*